## UNITED STATES DISTRICT COURT
## FOR EASTERN DISTRICT OF TENNESSEE

NIKOLAS SHIPLEY                             )
                                           )
      *Plaintiff,*                    )
                                           )
v.                                          )        Case No:_____
                                           )        JURY DEMAND
CHATTANOOGA POLICE DEPARTMENT                )
OFFICER DARNELL BRYANT, BADGE #395,          )
CHATTANOOGA POLICE DEPARTMENT                )
OFFICER SERRET, BADGE #845,                  )
CHATTANOOGA POLICE DEPARTMENT                )
OFFICER BUCKLEY, BADGE #1162 and             )
CITY OF CHATTANOOGA, TENNESSEE               )
                                           )
      *Defendants.*                   )

## COMPLAINT

Plaintiff, Nikolas Shipley, by and through counsel, Neal Pinkston, and

complaining of Defendants identified herein, states the following:

### INTRODUCTION

1.      This is a civil rights action for violations of Nikolas Shipley's ("Shipley") rights

secured to him by the Second, Fourth, and Fourteenth Amendments to the United States

Constitution.

2.      This is also an action seeking redress from the Defendants for damages that

arose from their violations of the laws of the State of Tennessee.

3.      Shipley brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 against

defendants, Chattanooga Police Department Officers Darnell Bryant, Badge #395 ("Bryant"),

Andrew Serret, Badge #845 ("Serret"), Buckley, Badge #1162 ("Buckley"), in their individual capacities and against defendant, the City of Chattanooga, Tennessee ("Chattanooga").

4.    Shipley raises state law claims against the individual officers for conversion, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Shipley raises a state law claim of negligence against Chattanooga.

5.    Shipley seeks compensatory damages and punitive damages against the individual defendants and compensatory claims against the city of Chattanooga.  Shipley seeks attorney's fees against all the defendants pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

6.    Shipley's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress deprivation, under color of state law, of rights, privileges, and immunities secured to Shipley by the Constitution of the United States.

7.    This action arises under the Second, Fourth, and Fourteenth Amendments to the United States Constitution. This court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. Further, this court has jurisdiction over the state claims pursuant to 28 U.S.C. § 1357 as they arise from the same case and controversies.

8.    Venue is proper in the Eastern District of Tennessee under 28 U.S.C. § 1391 (b)(1) and (2) as the events complained of occurred in the Eastern District of Tennessee.

## THE PARTIES

### PLAINTIFF

9.    Shipley is a citizen of the State of Tennessee and a resident of Hamilton County, Tennessee. Shipley is the C.E.O. of Happy Hemp Farmacy: Wellness and Dab Bar

located at 3010 Cummings Hwy Chattanooga, Tennessee 37419.

**DEFENDANTS**

**<u>BRYANT</u>**

10.     At all relevant times, Bryant, was a sworn law enforcement officer employed by the City of Chattanooga and working at the Chattanooga Police Department.

11.     At all relevant times, Bryant acted within the scope and course of his employment with Chattanooga.

12.     Shipley sues Bryant in his individual capacity.

**<u>SERRET</u>**

13.     At all relevant times, Serret, was a sworn law enforcement officer employed by the City of Chattanooga and working at the Chattanooga Police Department.

14.     At all relevant times, Serret acted within the scope and course of his employment with Chattanooga.

15.     Shipley sues Serret in his individual capacity.

**<u>BUCKLEY</u>**

16.     At all relevant times, Buckley, was a sworn law enforcement officer employed by the City of Chattanooga and working at the Chattanooga Police Department.

17.     At all relevant times, Buckley acted within the scope and course of his employment with Chattanooga.

18.     Shipley sues Buckley in his individual capacity.

## CHATTANOOGA

19.     Chattanooga is a municipality formed under the laws of the State of Tennessee and operates a law enforcement agency known as the Chattanooga Police Department ("CPD").

20.     Chattanooga has a duty under state and federal law to ensure that its law enforcement officers are properly trained to perform their duties, are properly supervised during the performance of their duties, to ensure their law enforcement officers comply with federal and state laws, and further to ensure their law enforcement officers do not violate the constitutional rights of citizens.

21.     Shipley sues Chattanooga in that the unlawful constitutional violations averred herein were a result of a pattern and practice of Chattanooga and its law enforcement officers.

22.     Shipley also sues Chattanooga pursuant to the Tennessee Governmental Tort Liability Act codified at Tenn. Code Ann. § 29-20-101, et al.

## FACTUAL BACKGROUND

23.     That on or about December 18, 2023, Bryant, Serret, and Buckley initiated a traffic stop of a vehicle driven by Shipley.

24.     The traffic stop occurred at or near the 3535 block of Broad Street in Chattanooga, Tennessee.

25.     According to the affidavit of complaint, Shipley's vehicle was stopped for dark tinted windows. The stop occurred at approximately 23:52 hours.

26.      Laws codified at Tenn. Code Ann. § 55-9-107 (a)(1)(A)(B) dictate

> "It is unlawful for any person to operate, upon a public highway, street or
> road, any motor vehicle in which any window that has a visible transmittance

equal to, but not less than, that specified in Federal Motor Vehicle Safety Standard No. 205, codified in 49 CFR 571.205, has been altered, treated or replaced by affixing, application, or installation of any material that:

    A. Has a visible light transmittance of less than thirty-give percent (35%);

    Or

    B. With the exception of the manufacturer's standard installed shade band, reduces visible light transmittance in the windshield below seventy percent (70%).

27.    Previously, Shipley had his vehicle windows tinted by a professional installer. According to Tenn Code. Ann. § 55-9-107(a)(2), it is unlawful for a professional installer to apply tinting materials to any motor vehicle so as to cause that motor vehicle to be in violation of this section. According to the affidavit of complaint, Bryant alleged the window tinting was at 29%.

28.    The affidavit of complaint is devoid of any explanation of the tools used to examine the windows or the procedures Bryant followed to accurately test the windows. Such traffic stop was unlawful and lacked probable cause.

29.    At the conclusion of the traffic stop, Shipley was neither cited nor charged with a window tint violation as stated at Tenn. Code Ann. § 55-9-107, et al.

30.    Bryant approached the vehicle and requested Shipley exit the vehicle. Shipley was wearing, about his waist, a holster which contained a firearm. The holster and firearm were openly visible.

31.    Prior to the traffic stop, the State of Tennessee issued Shipley a license to carry firearms. The State of Tennessee does not require citizens to have a permit to openly carry or concealed carry firearms. Despite these legal protections, Shipley's firearm and holster were seized by the law enforcement officers. The acts and omissions of the defendants resulted in

5

the intentional and negligent infliction of emotional distress. Such unreasonable searches and seizures and deprivation of other constitutional rights caused Shipley fear, worry, and concern about his physical and mental well-being.

32.     Serret could allegedly smell the odor of marijuana emanating from Shipley's vehicle. A full search of the vehicle's interior and trunk was commenced by Bryant, Serret, and Buckley.

33.     During the traffic stop, an unknown law enforcement officer arrived with a drug dog to search the exterior of Shipley's vehicle. Drug detection dogs are often sent around the exterior of vehicles to search to detect odors of illegal controlled substances which might be within the vehicle's interior.

34.     The drug detection dogs will make a motion or sound if they detect odors of illegal substances. Law enforcement officers often refer to the motion or sound as the drug detection dog made a "hit." A hit would refer to the positive response of the drug detection dog that the dog detected an odor or odors of illegal controlled substances inside the vehicle's interior.

35.     The drug detection dog searched the exterior of Shipley's vehicle but never made a positive response to illegal controlled substances inside Shipley's vehicle. The drug detection dog never made a "hit."

36.     Despite lacking probable cause due to the drug detection dog not making a "hit", a full search of Shipley's person, passenger's person, vehicle's interior, and vehicle's trunk commenced. Again, the acts and omissions of the defendants caused Shipley to be subjected to the intentional and negligent infliction of emotional distress.

37.     Hemp and marijuana both derive from the plant genus Cannabis. Both have almost identical appearances and smells.

38.     Federal law codified at 7 U.S.C. § 1639 (o)(1) defines hemp as the plant *Cananbis sativa L.* and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a THC concentration of not more than .3 percent on a dry weight basis. Tennessee law comports with the federal counterpart.

39.     Upon information and belief, Bryant, Serret, and Buckley have never been trained by Chattanooga or CPD on how to distinguish the smells of hemp and marijuana.  It is further believed at the time of this particular traffic stop Chattanooga or CPD did not train any law enforcement officers on how to differentiate between the smell of hemp and marijuana.

40.     Chattanooga has a legal obligation to properly train its law enforcement officers. As federal and state laws change and evolve, Chattanooga has to ensure its law enforcement officers, under the color of law, police its citizenry in a constitutionally appropriate manner.

41.     Chattanooga has been on notice in the change of laws regarding the legality of possessing hemp and certain hemp-derived products. New laws passed by the United States Congress and the Tennessee General Assembly are publicly posted for all citizens to read. If it desires, Chattanooga can choose to ignore new laws and how such laws effect police power. However, Chattanooga and its law enforcement officers are still obligated to police citizens under current law.

42.     The Tennessee Bureau of Investigation ("TBI") issued a memo dated August

26, 2019 to citizens and municipalities, including Chattanooga, across the State of

Tennessee. The memo detailed the difficulty in differentiating between hemp and

marijuana and the extreme laboratory costs involved in differentiating the two products.

TBI concluded by stating that testing to determine whether a substance was either hemp or

marijuana would not be performed in misdemeanor cases involving plant materials.

43. Chattanooga failed to properly train its law enforcement officers about changes

in the law which allow citizens to possess hemp and hemp-derived products. Chattanooga

failed to properly train its law enforcement officers on how to differentiate the odors of hemp

and marijuana.

44. Chattanooga is bound by the United States Constitution and its laws.

Article VI, Paragraph 2, of the United States Constitution reads in part:

> "This Constitution, and the laws of the United States, which shall be made in '
> pursuance thereof; and all treaties made, or which shall be made, under the
> authority of the United States, shall be the supreme law of the land; and the judges
> in every state shall be bound thereby, anything in the Constitution or laws of any
> State to the contrary notwithstanding."

45. By failing to properly train its law enforcement officers, Chattanooga has

subjected citizens to being victims of unreasonable searches and seizures which violate

the Constitutions of the United States and the State of Tennessee.

46. Despite this lack of training, there are an unknown number of traffic stops

based upon the alleged odor of marijuana that have occurred in the city limits of Chattanooga

and Hamilton County. Each traffic stop based upon the odor of marijuana is a stop lacking

probable cause and any subsequent search of a person or vehicle are unreasonable as are

the seizures of any property. All such stops, searches, and seizures are in direct violation of the

United States and Tennessee Constitutions.

47.     The change in federal and state law as to defining hemp has allowed the ability to legally grow, possess, purchase, manufacture, use, and in some cases consume hemp and its many derivatives. The hemp industry across the United States has taken advantage of the change in law.

48.     Shipley is the C.E.O of Happy Hemp Farmacy, A Wellness and Dab Bar/Hemp Shop located in Hamilton County, Tennessee. Happy Hemp Farmacy sells hemp products and hemp derived products to the general public.

49.     After being retained, the law enforcement officers read Shipley his *Miranda* rights. Shipley advised Bryant, Serret, and Buckley that he owned a business selling hemp and hemp-derived products and there was no marijuana in the vehicle or about his person.

50.     A passenger in Shipley's vehicle was removed from the vehicle. The passenger's purse was searched and later Bryant charged the passenger with possession of an alleged illegal substance via an arrest warrant filed with the Hamilton County General Sessions Court. This criminal charge was subsequently dismissed.

51.     Notwithstanding the right to legally possess hemp and its derivatives, such as edibles, Bryant, Serret, and Buckley also seized several containers of hemp-derived edibles from the vehicle's trunk. Again, the law enforcement officers subjected Shipley to another unreasonable search and seizure.

52.     Bryant swore in his affidavit of complaint that all evidence seized including Shipley's firearm and holster were transported to the Chattanooga Police Department's Property Division.

53.     At the conclusion of the traffic stop, Bryant issued Shipley a barely legible citation in lieu of arrest charging him with a non-existent criminal charge of "Unlawful Poss." After being subjected to unreasonable searches and seizures, Shipley was cited with a non-existent criminal law violation. Such acts and omissions further subjected Shipley to additional emotional distress.

54.     Legal counsel arranged with the Silverdale Detention Facility for Shipley to turn himself in to be booked on the Bryant-issued citation. If Shipley failed to report for booking on the date listed on the citation, a warrant for his arrest would have been issued. However, Shipley was never able to be properly booked on the citation as it appears the citation was either lost or never turned into the Hamilton County General Sessions Court. Such acts and omissions further subjected Shipley to emotional distress over being booked at the Silverdale Detention Facility and a possible arrest warrant for failure to properly follow the issuance of a citation in lieu of arrest as dictated by Tennessee law.

55.     Despite Shipley facing no criminal charges, Chattanooga maintained control of all the seized items.  Legal counsel had to make further arrangements with a Chattanooga Police Department Captain for the return of Shipley's legally owned and possessed firearm.

56.     At a subsequent date, Shipley traveled to the Chattanooga Police Department's Property Division to regain possession of his firearm, holster, and containers of legal edibles.

57.     A property division employee retrieved and gave possession of the firearm to Shipley.  Shipley requested the return of his holster and legal edibles but was advised that only the firearm had been turned into the property division by Bryant, Serret, and/or Buckley. These acts and omissions of the defendants caused Shipley further emotional distress.

58.     Upon information and belief, Bryant, Serret, and Buckley took an oath

prior to becoming sworn law enforcement officers for Chattanooga.  In general, the oath

reads,

> "I do solemnly swear that I will support the Constitutions of the United States
> and of the State of Tennessee, and the ordinances of the City of Chattanooga,
> and will well and faithfully perform the duties imposed upon me as a police
> officer of the City of Chattanooga to the best of my ability; and that I will serve
> the United States, the State of Tennessee, and the City of Chattanooga honestly
> and faithfully, and will obey the orders of the officers and officials placed over
> me according to law."

59.     The right to bear arms, the right against being subjected to unreasonable

searches and seizures, and the right to due process of law are clearly established constitutional

rights in the United States of America. Neither Chattanooga nor the individual officers could

make a plausible argument of being unaware of these clearly established constitutional rights.

60.     Despite these clearly established constitutional rights, the acts and omissions

of all defendants displayed a clear, conscious disregard of Shipley's constitutional rights.

Shipley was deprived of his clearly established constitutional rights to bear arms, right against

being subjected to unreasonable searches and seizures, and the right to due process of law.

61.     The failure of Chattanooga to properly train its law enforcement officers to

recognize clearly established constitutional rights of citizens is a direct repudiation of the

United States Constitution.


### COUNT I:

**VIOLATION OF THE SECOND AMENDMENT
TO THE UNITED STATES CONSITUTION:
(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CHATTANOOGA)**

**UNLAWFUL SEIZURE RESULTING IN THE LOSS OF THE RIGHT TO BEAR ARMS**

**(42 U.S.C. § 1983)**

62.     Paragraphs 1 through 61 are incorporated herein by reference as though fully

set forth.

63.     All defendants are liable to Shipley for injuries and damages resulting from the

unlawful seizure of his firearm and depriving him of his right to bear arms for a time period.


**COUNT II:**

**VIOLATION OF THE FOURTH AMENDMENT
TO THE UNITED STATES CONSTITUTION:
(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CHATTANOOGA)**

**UNREASONABLE SEIZURE WITHOUT PROBABLE CAUSE
(42 U.S.C. § 1983)**

64.     Paragraphs 1 through 61 are incorporated herein by reference as though fully

set forth.

65.     All defendants are liable to Shipley for injuries and damages resulting from the

unlawful seizure of his person and property.


**COUNT III:**

**VIOLATION OF THE FOURTEENTH
TO THE UNITED STATES CONSTITUTION
(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CHATTANOOGA)**

**DEPRIVATION OF PERSONAL PROPERTY WITHOUT DUE PROCESS OF LAW
(42 U.S.C. § 1983)**

66.     Paragraphs 1 through 61 are incorporated herein by reference as though fully

set forth.

67.     All defendants are liable to Shipley for injuries and damages resulting from the

deprivation of personal property without due process of law.

**COUNT IV:**

**VIOLATION OF THE FOURTEENTH**
**TO THE UNITED STATES CONSTITUTION**
**(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CHATTANOOGA)**

**DEPRIVATION OF CONSTITUTIONAL RIGHTS WITHOUT DUE PROCESS OF LAW**
**(42 U.S.C. § 1983)**

68.     Paragraphs 1 through 61 are incorporated herein by reference as though fully

set forth.

69.     All defendants are liable to Shipley for injuries and damages resulting from the

deprivation of his constitutional rights without due process of law.

**COUNT V:**

**CONVERSION OF PROPERTY UNDER TENNESSEE LAW**
**(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CHATTANOOGA)**

70.     Paragraphs 1 through 61 are incorporated herein by reference as though fully

set forth.

71.     All defendants are liable to Shipley for injuries and damages resulting from the

conversion of his personal property.

**COUNT VI:**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER TENNESSEE LAW**
**(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CHATTANOOGA)**

72.     Paragraphs 1 through 61 are incorporated herein by reference as though fully

set forth.

73.     All defendants are liable to Shipley for injuries and damages resulting from the

Intentional infliction of emotional distress that Shipley has experienced and continues to experience due to the acts and/or omissions of all defendants.

<u>**COUNT VII:**</u>

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER TENNESSEE LAW
(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CHATTANOOGA)**

74.     Paragraphs 1 through 61 are incorporated herein by reference as though fully set forth.

75.     All defendants are liable to Shipley for injuries and damages resulting from the negligent infliction of emotional distress that Shipley has experienced and continues to experience due to the acts and/or omissions of all defendants.

<u>**COUNT VIII:**</u>

**NEGLIGENCE UNDER TENNESSEE LAW
(AGAINST ALL INDIVIDUALLY NAMED DEFENDANTS AND CHATTANOOGA)**

76.     Paragraphs 1 through 61 are incorporated herein by reference as though fully set forth.

77.     All defendants are liable to Shipley for injuries and damages resulting from the negligence in training law enforcement officers, negligence in supervising law enforcement officers, and negligence in depriving Shipley of his constitutional rights. As a direct and proximate result of the negligence of all defendants, Shipley's constitutional rights were violated.

WHEREFORE, Shipley requests that this Court:

1.     Award compensatory and punitive damages against Bryant, Serret, and Buckley for each violation of Shipley's constitutional rights and compensatory damages against

Chattanooga.

2.      Award attorney's fees, expert fees, and all costs of litigation pursuant to

42 U.S.C. § 1988, and under any other applicable law;

3.      Award pre-judgment and post-judgment interest;

4.      Appoint an attorney, with a detailed knowledge of constitutional law and

criminal procedure to teach Chattanooga, its Police Department, and its law

enforcement officers and employees the constitutional rights enjoyed by all citizens under the

United States and Tennessee Constitutions.

5.      Require Chattanooga and its Chattanooga Police Department to file bi-annual

reports with this Court detailing the constitutional law topics taught and also the names of

all law enforcement officers and employees who attended the mandated classes.

6.      Award the appointed attorney reasonable attorney's fees for preparation of

classes and teaching of classes to Chattanooga and its Chattanooga Police Department.

7.      Award such other relief as this Court deems just and equitable.


SHIPLEY HEREBY DEMANDS A JURY TRIAL ON THOSE COUNTS ON WHICH HE IS
ENTITLED TO HAVE A TRIAL BY JURY.

                          Respectfully submitted,


                          ____/s/Neal Pinkston_____
                          Neal Pinkston, TN BPR # 021245
                          Pinkston Law, PLLC
                          1216 E. Main St., Ste. 206
                          Chattanooga, TN 37408
                          Office Number: (423) 654-8326
                          Cellular Number: (423) 497-7228
                          Attorney for Nikolas Shipley
                          mnealpinkston@gmail.com