UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| NIKOLAS SHIPLEY ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 1:23-CV-00299-KAC-SKL |
| ) | JURY DEMAND |
| CHATTANOOGA POLICE DEPARTMENT ) | |
| OFFICER DARNELL BRYANT, BADGE #395) | |
| CHATTANOOGA POLICE DEPARTMENT ) | |
| OFFICER SERRET, BADGE #845, ) | |
| CHATTANOOGA POLICE DEPARTMENT ) | |
| OFFICER BUCKLEY, BADGE #1162 and ) | |
| CITY OF CHATTANOOGA, TENNESSEE ) | |
| ) | |
| *Defendants.* ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS
COUNTS I, III, AND IV OF THE ORIGINAL COMPLAINT**

Comes now Plaintiff, Nikolas Shipley ("Shipley"), by and through undersigned counsel, and would respond in opposition to the Joint Motion to Dismiss for Failure to State a Claim (Doc. 18) specifically, as to Counts I, III, and IV of the Original Complaint (Doc. 1).

**FACTUAL BACKGROUND**

On March 22, 2024, all Defendants filed a Joint Motion to Dismiss for Failure to State a Claim (Doc. 18), pursuant to Fed. R. Civ. P. 12(b)(6), and requested an order dismissing Counts I, III, and IV, of the Original Complaint (Doc. 1).

**STANDARD OF REVIEW FOR A MOTION TO DISMISS BASED UPON FED. R. CIV. P. 12(b)(6)**

To survive a Fed. Rule Civ. P. 12(b)(6) motion, a complaint must satisfy the general notice pleading requirements of Federal Rule of Civil Procedure 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. RULE CIV. P. 8(a)(2). This rule reflects a simplified and lenient pleading system that "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep litigants out of court. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513-14 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions"). *See also, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168-69 (1993) . The Court will construe the complaint in light most favorable to the Plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the Plaintiff. *Directv, Inc., v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).

The Supreme Court unanimously, expressly, and repeatedly has rejected a "heightened pleading standard." *See Leatherman*, at 168-69 (no heightened pleading standard for municipal liability claims; subjecting them to an added specificity requirement must be done by amending the Federal Rules, not by judicial interpretation).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court noted that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)," and the Court should deny a motion to dismiss even if it appears "that a recovery is very

remote and unlikely." *Id.,* at 556 (internal citation and footnote omitted), (*following Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In *Twombly*, the Supreme Court expressly reconfirmed "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.

Two weeks after deciding *Twombly*, the Supreme Court issued *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*), and put to rest any question that *Twombly* overruled Rule 8(a)'s general notice-pleading scheme:

> *Federal Rule of Civil Procedure 8(a)(2)* requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

*Erickson*, at 93.

The Supreme Court further confirmed this Motion to Dismiss standard in *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011):

> Because this case was resolved on a motion to dismiss for failure to state a claim, the question below was "not whether [Skinner] will ultimately prevail" on his procedural due process claim, see *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), but whether his complaint was sufficient to cross the federal court's threshold, see *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Skinner's complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible "short and plain" statement of the plaintiff's claim, not an exposition of his legal argument. See 5 C. WRIGHT & A. MILLER, Federal Practice & Procedure § 1219, pp. 277-278 (3d ed.2004 and Supp.2010).

*Switzer*, at 1296 (emphasis added). *See also Rosario v. Kent Cty.*, 2019 U.S. Dist. LEXIS 122302, at *11 (W.D. Mich. July 23, 2019) ("To be sure, the subsequent decisions from the Supreme Court, namely, *Twombly* and *Iqbal*, direct that a Plaintiff's allegations raise a 'plausible' claim of *Monell* liability. But, for purposes of Rule 12, no more than that is necessary.").

Additionally, as the *Swierkiewicz* Court noted, "These requirements are exemplified by the Federal Rules of Civil Procedure Forms, which 'are sufficient under the rules and are

3

intended to indicate the simplicity and brevity of statement which the rules contemplate.' *Fed. Rule Civ. Proc. 84*." 534 U.S. at 513, n. 4. "For example, Form 9 sets forth a complaint for negligence in which plaintiff simply states in relevant part: 'On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway.'" *Id.* Courts are required to follow Rule 84 and the Forms if Congress has declined to amend them. *See Leatherman*, 507 U.S. at 168 (changes to the Federal Rules "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation."). District courts continue to endorse pleading consistent with Rule 84 and the Forms. *See, e.g., Ziptronix Inc. v. Omnivision Tech., Inc.,* 2011 U.S. Dist. LEXIS 129275, at *9 (N.D. Cal. Nov. 8, 2011); *Microsoft Corp. v. Phoenix Solutions, Inc.,* 741 F. Supp. 2d 1156, 1159 (C.D. Cal. 2010); *Baldain v. Am. Home Mortg. Servicing, Inc.,* 2010 U.S. Dist. LEXIS 5671, at *37 (E.D. Cal. Jan. 5, 2010); *Elan Microelectronics Corp. v. Apple, Inc.,* 2009 U.S. Dist. LEXIS 83715, at *6-7 (N.D. Cal. Sept. 14, 2009).

Finally, it is well documented in civil rights jurisprudence that motions to dismiss are to be scrutinized and only granted in extreme circumstances. *See e.g. Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (motions to dismiss civil rights complaints should be "scrutinized with special care"); *Thurmond v. Cty. of Wayne*, 447 F. App'x 643, 653 (6th Cir. 2011) ("Dismissals of actions brought under the civil rights statutes are scrutinized with special care."). *See Azar v. Conley,* 456 F.2d 1382, 1384 n. 1 (6th Cir.1972)); *Scott v. Ambani,* 577 F.3d 642, 646 (6th Cir. 2009) (same); *Scott v. Ambani,* 577

F.3d 642, 646 (6th Cir. 2009) (same); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976) (same); *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) ("the rule of liberal construction is 'particularly important in civil rights cases.'") *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992); *U.S. General, Inc. v.* Schoeder, 400 F.Supp. 713 (D.C. Wis. 1975); *Mercado v. Kingsley Area Schools/Traverse City Public Schools Adult Educ. Consortium*, 727 F.Supp. 335 (W.D. Mich. 1989); *Mahoney v. National Organization for Women,* 681 F.Supp. 129 (D. Conn. 1987).

## **LEGAL ARGUMENT**

**The Right to Bear Arms is a Clearly Established Constitutional Right**

The Second Amendment provides "A well regulated Militia, being necessary to the security of a Free State, the right of the people to keep and bear arms, shall not be infringed." Amendment Two was ratified on December 15, 1791, and thus established the right of citizens to possess weapons. Since it's ratification, there have been tremendous political and legal debates on the meaning of the Second Amendment. Those battles continue well into the 21st Century. Recent United States Supreme Court jurisprudence have once again brought the Second Amendment under further scrutiny. In *N.Y.S. Rifle & Pistol Ass'n, Inc. v.Bruen,* 142 S.Ct. 2111 (2022), the United States Supreme Court stated,

> "In *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago,* 561 U.S. 742, 130 S.Ct.3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald,*

5

> that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."

Plaintiff understands the constitutional protections offered under the Second Amendment are not without restrictions. However, American citizens hold the clearly constitutional right to carry a handgun for self-defense outside of the home. As stated in the Defendant's Motion to Dismiss and accompanying Memorandum, "a defendant is entitled to qualified immunity unless the evidence, viewed in light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Coble v. City of White House,* 634 F.3d 865,870 (6th Cir. 2011). In the present case, Shipley was detained by the individual officers on a traffic stop for allegedly driving an automobile with illegally tinted windows. Shipley was never cited or charged with illegally tinted windows. The individual defendants removed Shipley from the vehicle and seized a firearm that was seen visibly in a holster attached around his waist. Prior to the traffic stop, the State of Tennessee issued Shipley a license to carry firearms. The State of Tennessee does not require citizens to have a permit to openly carry firearms. Despite these legal protections, Shipley's firearm and holster were illegally seized by the individual defendants.

The individual defendants contend they should not be subjected to this lawsuit as their actions are protected by qualified immunity. In *Barker v. Goodrich,* 649 F.3d 428,433 (6th Cir. 2011), qualified immunity protects "government officials performing discretionary functions...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." quoting *Harlow v. Fitzgerald,* 457 U.S. 800,818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Traditionally, Courts apply a two-prong test to qualified immunity claims, determining

"whether the facts that a plaintiff has …. shown make out a violation of a constitutional right," and "whether the right was 'clearly established' at the time of [the] defendant's alleged misconduct. Barker quoting *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) In *Hope v. Pelzer,* 536 U.S. 730, 739 (2002), the United States Supreme Court indicated that for qualified immunity to apply that government officials must have had fair warning their alleged treatment of an individual was unconstitutional at the time of the alleged constitutional violation(s).

At the time the individual defendants effectuated the traffic stop on Shipley, the right to bear arms had been a clearly established constitutional right for two hundred-thirty three years. The individual defendants seized his firearm for no lawful purpose and then stored the firearm in the Property Department of the Chattanooga Police Department ("CPD"). In their Motion to Dismiss, the individual defendants contend the right to bear a particular firearm is not a clearly established constitutional right. It is argued that though Shipley's firearm was seized in this instance, he still held the right to procure other arms. Shipley is not arguing the defendants violated his right to bear a particular firearm. Instead, he is emphatically stating that on December 18, 2022, the individual defendants seized his firearm for no lawful purpose and at that moment deprived him of the right to bear arms which he had legal right to possess. In *N.Y.S. Rifle,* the United States Supreme Court stated, "[w]e reiterate that the standard for applying the Second Amendment as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court

7

conclude that the individual's conduct falls outside the Second Amendments "unqualified command."

*Konigsberg,* 366 U.S. at 50, n. 10, 81 S.Ct. 997. Clearly the individual defendants violated a clearly established constitutional right of Shipley.

The argument that Shipley was free to bear other arms lessens the importance of his right to bear arms on December 18, 2022. Perhaps, evaluating the violation of his right to bear arms on December 18, 2022, could be aided by an examination of a violation of the First Amendment's right to free speech and expression. In the case of *Cohen v. California,* a California citizen was arrested for violating a California statute prohibiting the public display of offensive messages. Cohen wore a jacket emblazoned with the message of "F… THE DRAFT.STOP THE WAR." The United States Supreme Court held the California statute violated Cohen's First Amendment right to free speech and expression. Even after Cohen was arrested, he still maintained his First Amendment right to free speech and expression. Maintaining his future First Amendment right to free speech and expression did not mean his rights were not violated when he was arrested wearing the above-described jacket. The same logic applies to Shipley. On the night of his traffic stop, he was illegally stopped and detained. Further, his lawfully owned firearm was seized from his person by the individual defendants. His clearly established constitutional rights were violated and as such the individual defendants should not enjoy the shield of qualified immunity.

**STATE DUE PROCESS VIOLATIONS**

Originally Defendant Bryant had issued a citation to Shipley. The citation alleged the non-existent crime of "Unlawful Poss." The citation was either lost or never turned into the

8
Case 1:23-cv-00299-KAC-SKL   Document 39   Filed 05/03/24   Page 8 of 14   PageID #: 165

Hamilton County General Sessions Court as is required. If any of the individual defendants had turned in the citation as required, Shipley would have had to present himself to the Hamilton County Jail and Detention to be booked on the citation. After the completion of the booking process, Shipley's citation would be docketed in one of the Hamilton County General Sessions Courts. At subsequent court appearances, Shipley or his counsel could have made a motion for the return of the illegally seized items. Tenn. R. Crim. P. 41(g) provides:

> **Motion for Return or Suppression of Property**. "A person aggrieved by an unlawful or invalid search or seizure may move the court pursuant to Rule 12(b) to suppress any evidence obtained in the unlawful search or seizure. If property was unlawfully seized, the aggrieved person may move for the return of the property. The motion to suppress and/or motion to return property unlawfully seized, may be granted, under applicable substantive law and except as to the return of contraband, if the evidence in support of the motion shows that:
> (1) the search or seizure was made illegally without a search warrant or illegally with an invalid search warrant, or in any other way in violation of the constitutional protection against unreasonable searches and seizures."

The illegal search and seizure of the items from Shipley was further compounded by the acts and/or omissions of the individual defendants of not turning in the citation. By not turning in the citation, Shipley was denied a due process right under the Tennessee Rules of Criminal Procedure for the return of illegally seized property.

## **FEDERAL DUE PROCESS VIOLATIONS**

Title 42 U.S.C.§ 1983 provides a remedy for deprivation of rights secured by the Constitution and laws of the United States when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory…" In the case of *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924 (1982), the United States Supreme Court

9

compared the relationship of §1983 actions and the Fourteenth Amendment to the United States Constitution. The *Lugar* Court stated, "[i]n *United States v. Price,* 383 U.S. 787, 794, n. 7 (1966), we explicitly stated that the requirements were identical: 'In cases under §1983, under color of law has consistently been treated as the same thing as the state action required under the Fourteenth Amendment.'" There is no question that the individual defendants are state actors and thus potentially liable for violations of constitutional rights. Each individual defendant was, at the time of this incident, an Officer with CPD. Thus, they are state actors. The *Lugar* Court held "[t]o read the 'under of color statute' language of the Act in such a way as to impose the limit on those Fourteenth Amendment violations that may be redressed by the §1983 cause of action would be wholly inconsistent with the purpose of the § 1 of the Civil Rights Act of 1871, 17 Stat. 13, from which §1983 is derived. The Act was passed 'for the express purpose of enforce[ing] the Provisions of the Fourteenth Amendment.'" quoting *Lynch v. Household Finance Corp.,* 405 U.S. 538, 545 (1972). The defendants' desire to limit Shipley's right to pursue remedies for violations of civil rights should not be allowed under relevant federal law and the 14th Amendment to the United States Constitution. The individual defendants seized Shipley's firearm and holster without any lawful purpose and in doing so violated his constitutional rights without due process of law and they deprived him of those rights held sacred by our Founding Fathers and the United States Constitution. The 14th Amendment claims more specifically articulated in Counts III and IV of the Original Complaint (Doc. 1) should not be dismissed but maintained as viable causes of action.

## **CONCLUSION**

In conclusion, Shipley maintains that he has stated a claim upon which relief should

be granted and the Defendants' request to dismiss Counts I, III, and IV should be denied and he should be allowed to proceed with these causes of action under the Second and Fourteenth Amendments of the United States Constitution.

Respectfully submitted,

**PINKSTON LAW, PLLC**
___/s/_ Neal Pinkston_____
Neal Pinkston, BPR# 021245
Pinkston Law, PLLC
1216 E. Main St., Ste. 206
Chattanooga, TN 37408
Office Number: (423) 654-8326
Cellular Number: (423) 497-7228
neal@nealpinkstonlaw.com
mnealpinkston@gmail.com
***Attorney for Plaintiff Nikolas Shipley***

12