**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF TENNESSEE AT CHATTANOOGA**

| | | |
|---|---|---|
| NIKOLAS SHIPLEY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No: 1:23-CV-299-KAC-MJD |
| | ) | |
| CHATTANOOGA POLICE DEPARTMENT OFFICER | ) | |
| DARNELL BRYANT, BADGE # 395, | ) | |
| CHATTANOOGA POLICE DEPARTMENT OFFICER | ) | |
| SERRET, BADGE # 845, | ) | |
| CHATTANOOGA POLICE DEPARTMENT OFFICER | ) | |
| BUCKLEY, BADGE # 1126, AND CITY OF | ) | |
| CHATTANOOGA, TENNESSEE | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

_____

**PLAINTIFF, NIKOLAS SHIPLEY'S MEMORANDUM IN RESPONSE
TO MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS,
CITY OF CHATTANOOGA, CHATTANOOGA POLICE DEPARTMENT, AND
DEFENDANT OFFICERS IN THEIR OFFICIAL CAPACITIES**

COMES NOW Plaintiff Nikolas Shipley ("Shipley"), by and through counsel,

and respectfully submits this Memorandum of Law in Support of his Response to

Bryant's Motion for Summary Judgment.

## I.    INTRODUCTION

After the filing of the original Complaint (Doc. 1), this case has progressed to

the status wherein all Defendants are seeking summary judgment against Shipley's

claims as a matter of law.  A Joint Motion to Dismiss for Failure to State a Claim was filed

on April 1, 2024, by Defendants Bryant, Serret, and the City of Chattanooga. Shipley filed

a Response to the Motion to Dismiss for Failure to State a Claim on May 3, 2024. In early

January 2025, all defendants filed Motions for Summary Judgment. (Docs. 56, 61, and 66).

This Honorable Court issued a Memorandum Opinion and Order Granting Motion to

Dismiss in part. (Doc. 72)  Shipley now files his response to the Motions for Summary

Judgment.

## II.    <u>STATEMENT OF FACTS</u>

On December 18, 2022, at approximately 11:52pm, Chattanooga Police Officer

Darnell Bryant ("Bryant") initiated a traffic stop on an automobile driven by the Plaintiff,

Nikolas Shipley ("Shipley") at or near the 3500 block of Broad Street in Chattanooga,

Tennessee.  Shipley's girlfriend at the time, Tiffany Harris ("Harris") was a passenger in

Shipley's vehicle.

Bryant approached the vehicle and requested Shipley exit the car. At the time,

Shipley was wearing a holstered gun about his waist. Both the gun and holster were openly

visible as Shipley got out of his vehicle as directed by Bryant.

Bryant told Shipley he stopped the vehicle because its window tint was too dark.

Shipley informed Bryant that a professional window tint company did the tint job

and had provided Shipley with a receipt showing the window tint fell within the parameters of Tennessee state law.

Despite this, Bryant used some sort of window tint gauge that was neither provided by nor approved for use by the Chattanooga Police Department to examine Shipley's window tint.

Bryant never indicated he had any special knowledge or training which would satisfactorily challenge the professional tinter's guarantee that the windows were legally tinted.

Bryant did not charge Shipley with a window tint violation and should have immediately ended the traffic stop and allowed Shipley and Harris to leave.

However, without any legal justification, Bryant continued to hold Shipley and Harris on the side of the road for around an hour, long after the few minutes necessary to establish if window tint meets the state of Tennessee's requirements.

At no point during the stop did Officer Bryant indicate he smelled marijuana or that he had any legitimate reason whatsoever to continue holding Shipley and Harris.

After the initial stop, other Chattanooga Police officers, including officers Serret ("Serret") and Buckley ("Buckley") also arrived on scene. There was no explanation given for why multiple officers were needed to assist with a potential window tint issue.

A short period of time later, a Chattanooga Police Department Officer also arrived

on scene with a K-9 unit and walked around Shipley's vehicle, attempting to detect any narcotics or controlled substances. The drug dog did not alert (did not make a "hit"), indicating no narcotics were detected.

Officer Serret claimed he smelled an odor of marijuana coming from the vehicle even though the K-9 had no positive hits on the vehicle and none of the other officers on scene corroborated this allegation.

Officers Bryant, Serret, and Buckley searched Shipley and Harris, Shipley's automobile, and the automobile's trunk without a search warrant.

Bryant, Serret, and Buckley took Shipley's firearm, firearm holster, and some CBD products found inside the vehicle. All of these items were legal for Shipley to obtain and possess. None of the officers gave Shipley any legal justification for confiscating his property because, in actuality, there is no legal justification for taking anything from Shipley.

Shipley was not charged with a legitimate crime. Officer Bryant gave him a citation for "Unlawful Poss," which is shorthand often used by law enforcement for "unlawful possession," but Bryant did not indicate what Shipley had illegally possessed. This fictitious charge required Shipley to turn himself in to the jail for booking.

As Shipley was not charged with a legitimate crime, the deficient citation was never heard in court.

Although Shipley had a concealed carry permit for the gun and Tennessee law does not require a license to open carry a firearm, defendants refused to return Shipley's property. Shipley was forced to hire legal counsel before Chattanooga police would return Shipley's firearm.

Shipley asked for his other possessions, the holster and the CBD gummies, but was told the gun was the only item in the custody of Chattanooga police. To date, those other items have not been returned.

Shipley filed this suit in response to defendants' unjustified traffic stop, which led to him being under arrest for an unlawfully long period of time, his being subjected to an unlawful search and seizure of his person and vehicle, and the illegal taking of his personal property without any lawful cause.

This factual basis was supplied in the attached exhibits to include Bryant Deposition, Shipley Deposition, and various Body Cam Videos.

### III. LAW AND ARUGMENT

**A. STANDARD OF REVIEW**

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catreet,* 477 U.S, 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Viewing the evidence in light most favorable to the non-moving party, this Court must

determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986). In *Interroyal Corp v. Sponseller,* 889 F.2d 108, 110 (6th Cir. 1989), the United States Court of Appeals for the Sixth Circuit reviewed summary judgment and issues of fact and stated:

> "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." *Webster's Third New International Dictionary (1986).*

No genuine issue of material facts exists if "reasonable minds could come to but one conclusion, in favor of the moving party." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1065(6th Cir. 2015). "Materiality" is determined by the substantive law governing the claim."

"A dispute is genuine only if based on evidence upon which a reasonable jury could return a verdict in favor of a nonmoving party." *Shreve v. Franklin County, Ohio,* 743 F.3d 126, 132 (6th Cir.2014). There exist genuine material issues of fact and a reasonable jury could in fact rule for Shipley and conclude his 4th Amendment rights were violated as well as prevail on various state law claims. "In an action brought pursuant to 42 U.S.C. § 1983, the plaintiff must prove that (1) the challenged conduct was committed by a person acting under the color of state law, and (2) the conduct caused a deprivation of the

person's rights or privileges protected by the laws or Constitution of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). *Summers v. Leis,* 368 F.3d 881 (6th Cir. 2004).

**B.     BRYANT IS NOT ENTITLED TO QUALIFIED IMMUNITY FOR SHIPLEY'S CLAIMS ARISING UNDER 42 U.S.C. § 1983.**

"The purpose of a qualified immunity defense is not only protection from civil damages but protection from the rigors of litigation itself; including the potential disruptiveness of discovery." *Harlow v. Fitzgerald,* 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Once a qualified immunity defense is raised, it is Plaintiff Shipley's burden to show that Bryant is not entitled to qualified immunity. *Burgess v. Fischer,* 735 F.3d 462, 472 (6th Cir. 2013). The doctrine of qualified immunity shields from liability for civil damages those officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* at 818.

When determining whether qualified immunity applies, courts view facts in the light most favorable to the plaintiff. *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893k, 900-01 (6th Cir. 2004)

This Court must evaluate Bryant's claim of qualified immunity "by determining Whether (1) a constitutional violated occurred, (2) the right violated was clearly

established, and (3) "the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra,* 186 F.3d 685,691 (6th Cir. 1999) (en banc). "It may often be difficult to decide whether a right is clearly established without [first] deciding precisely what the constitutional right happens to be."

In analyzing whether a constitutional right was clearly established, "we must look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Buckner v. Kilgore,* 36 F.3d 536, 539 (6th Cir. 1994).

### C. BRYANT VIOLATED SHIPLEY'S FOURTH AMENDMENT RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES

The Fourth Amendment to the United States Constitution reads,

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants Shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Without a search warrant or any warrantless exception, Bryant and the other defendants searched Mr. Shipley's person, his automobile, and his automobile trunk. Without a search warrant or any warrantless exceptions, Bryant and the other defendants took Mr. Shipley's

private property to include his gun, holster, and CBD products. Bryant and the other defendants clearly violated Shipley's Fourth Amendment right to be safe from unreasonable searches and seizures.

Bryant's stop of Shipley for an alleged violation of Tennessee's window tint law is unreliable and the circumstances of this incident cannot give an officer reasonable suspicion to initiate a traffic stop. Bryant notified Shipley that the traffic stop was initiated because his windows were too dark. However, Bryant first noticed Shipley's automobile when it was parked at a gas station. Despite observing Shipley and his automobile, Bryant made no effort to approach or stop Shipley. Bryant allowed Shipley to leave the scene with an alleged window tint violation and then decided to pull him over. Bryant wanted to initiate a traffic stop on Shipley instead of resolving the issue while the automobile was parked at the gas station.

The Sixth Circuit has held that an "officer reasonably suspects a window-tint violation if the officer is 'familiar' with their state's tint law and 'estimate[s] that [a] vehicle [is] tinted substantially darker than the law permits." *United States v. Shelton,* 817 Fed.App. 217, 219 (6th Cir. 2020) (quoting *Shank*, 543 F.3d at 313) ('we have held that an officer's traffic stop of an individual for unlawful window tinting does not run afoul of the Fourth Amendment where the officer has 'substantial experience enforcing this traffic regulation' and is 'familiar [ ] window tinting.' )

Such experience cannot be inferred or assumed to the benefit of Bryant. Based upon his written affidavit of complaint and the collective body camera footage, a reasonable person would notice that Bryant neither indicates his experience nor his familiarity with window tinting. Prior to testing Shipley's windows, Bryant never expressed a familiarity with T.CA. § 55-9-107, Tennessee's window tint law, or the requirements of that law. Further, Bryant never demonstrated what type of device he was using to test window tint, the reliability of said device, his knowledge of said device, or the reliability of the device's results.

Upon information and belief, CPD does not teach its officers how to investigate window tint violations. These training omissions are negligent and reckless. CPD does not issue department-approved window tint gauging instruments nor does it teach officers which instruments are reliable to gauge window tint or how to accurately operate such a device.

As evidenced in Defendant Buckley's body cam footage, Shipley told the defendants he had the window tint installed by a professional window tint operator. Tenn. Code Ann. § 55-9-107(a)(1)(2) states:

"(a)(1) It is unlawful for any person to operate upon a public highway, street or road, any motor vehicle in which any window that has a visible light transmittance equal to but not less than, that specified in Federal Motor Vehicle Safety Standard No. 205, codified in 49 CFR 571.205, has been altered, treated or replaced by affixing, application or installation of any material that:
(A) Has a visible light transmittance of less than thirty-five percent (35%); or

> (B) With the exception of the manufacturer's standard installed shade band, Reduces the visible light transmittance in the windshield below seventy percent (70%)
> (2) Any person who installs window tinting materials in this state for profit, barter, or wages or commissions is defined as a 'professional installer' for the purposes of this section; and it is unlawful for a professional installer to apply tinting materials to any motor vehicle so as to cause that motor vehicle to be in violation of this section."

Tenn. Code Ann. § 55-9-107 is punishable by fine only.

Bryant lacked reasonable suspicion to stop Shipley's automobile. "Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *Collazo,* 818 F.3d at 257 (quoting *United States v. Shank,* 543 F.3d 309, 313 (6th Cir. 2008). Defendant Bryant lacked reasonable suspicion to pull over Shipley's automobile because he lacked any training to detect window tint violations and his window tint device – purchased on Amazon and not department-approved or issued – lacked any recognizable utility to be beneficial in the investigation of an alleged violation of Tenn. Code Ann. § 55-9-107.

### D. BRYANT'S EXTENSION OF THE TRAFFIC STOP IN ORDER TO PERFORM A SEARCH WAS UNLAWFUL AND VIOLATED MR. SHIPLEY'S CONSTITUTIONAL PROTECTIONS AGAINST UNLAWFUL SEARCH AND SEIZURE

Shipley does not submit that the initial stop was constitutionally permissible. Even if an initial stop is constitutionally permissible, any subsequent detention must also comply with the Constitution and may not, therefore, "be excessively intrusive and must be reasonably related in time to the investigation. *United States v. Wellman,* 185 F.3d 651,

656 (6th Cir. 1999).

"A routine traffic stop is more like a brief stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, than an arrest *see Arizona v. Johnson,* 555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694. The duration of the traffic stop is to be determined by the traffic stop's purpose. *Rodriquez v. United States,* 135 S.Ct. 1609, 1611, 191 L.2d 492 (2015). In *Illinois v. Caballes,* 543 U.S. 405, 125 S. Ct. 834, 160 L.Ed.2d 842 (2005), the Supreme Court cautioned that a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket. 543 U.S., at 407, 125 S.Ct. 834.

Bryant's stop of Shipley was prolonged well beyond the reasonable time required to issue a warning for a window tint violation. The entire stop, seizure, and detention lasted almost an hour. Bryant extended the traffic stop for reasons other than investigation of the window tint violation. Bryant's window tint observations are not reliable, based on his own decision not to charge Shipley with a tint violation, and therefore cannot form the reasonable suspicion needed to stop the vehicle. The stop of Shipley's vehicle was constitutionally impermissible.

### E. SHIPLEY'S CONVERSATION WITH OFFICERS PROVIDED NO REASONABLE SUSPICION TO SEARCH HIS AUTOMOBILE

After stopping and seizing Shipley, Bryant notified Shipley of the basis for the

traffic stop. As evidenced in Defendant Buckley's body cam footage, Bryant states he

pulled Shipley over for window tint not for the smell of marijuana. "A person is seized only

when, by means of physical force or show of authority, his freedom of movement is

restrained." *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1547, 113 L.Ed.2d

690 (1991). The seizing officer was dressed in his full law enforcement uniform and was

traveling in a patrol vehicle marked with CPD decals and adorned with emergency

lights and sirens. Bryan used his authority as a law enforcement officer to detain

Shipley.  "A suspect is 'in custody' for purposes of receiving Miranda protection if there has

been a 'formal arrest or restraint on freedom of movement.'" *Mason v. Mitchell,* 320 F.3d

604, 631 (6th Cir. 2003) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50

L.Ed.2d 714 (1977). Shipley was in the custody of Bryant and his freedom of movement was

restrained. Shipley was not free to leave. The Sixth Circuit Court of Appeals has had many

occasions to address "reasonable suspicion."  In *United States v. Smith,* 263 F.3d 571, 588

(6th Cir. 2001), the appellate court stated,

> "In *United States v. Hill,* 195 F.3d 258, 264 (6th Cir. 1999), *cert denied,* 528 U.S.
> 1176, 120 S.Ct. 1207, 145 L.Ed.2d 1110 (2000), this Court wrote that [o]nce the
> purpose of the traffic is completed, a motorist cannot be further detained unless
> something that occurred during the stop caused the officer to have a reasonable
> articulable suspicion that criminal activity was afoot." *See also United States v.
> mesa,* 62 F.3d 159, 162 (6th Cir. 1995) ("Once the purposes of the initial traffic
> stop were completed, there is no doubt the officer could not further detain unless
> something that occurred during the traffic stop generated the reasonable necessary
> suspicion to justify a further detention."). Reasonable suspicion requires specific
> and articulable facts, which, taken together with rational inferences from those

facts, reasonably warrant the continued detention of a motorist after a traffic stop." *See Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We determine whether an officer formed the requisite, reasonable, articulable suspicion during a traffic stop under a 'totality of circumstances' analysis. *See United States v. Erwin,* 155 F.3d 818, 822 (6th Cir. 1998) (en banc), *cert denied,* 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 904 (1999). This means that we must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately. *See United States v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). 'Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person.....of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The evidence offered as grounds for reasonable suspicion is to be viewed using a common sense approach, as understood by those in the field law enforcement. *See Cortez,* 449 U.S. at 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

Shipley's vehicle was stopped for an erroneously alleged violation of Tennessee's window tint law. The stop extended its initial purpose and was utilized to detain Shipley and subject him to custodial interrogation and to develop reasonable suspicion. Reasonable suspicion was never developed but nonetheless, Bryant and the other defendants searched the vehicle long after the basis of the initial traffic stop.

### F. BRYANT'S SEARCH OF SHIPLEY'S VEHICLE VIOLATES SHIPLEY'S CONSTITUTIONAL RIGHT TO BE SAFE FROM UNREASONABLE SEARCH AND SEIZURE.

Bryant and the other defendants searched Shipley's person and vehicle without a search warrant. The United States Supreme Court discussed searches incident to arrest. In *Arizona v. Gant,* 556 U.S. 332 (2009), the Court stated,

"Consistent with our precedent, our analysis begins, as it should in every case

Addressing the reasonableness of a warrantless search, with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment---subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States,* 389 U.S. 347, 357 (1967). (footnote omitted). Among the exceptions to the warrant requirement is a search incident to arrest. See *Weeks v. United States*, 232 U.S. 383, 392 (1914). The exception derives from the interests in officer safety and evidence preservation that are typically implicated in arrest situations. See *United States v. Robinson,* 414 U.S. 218, 230-234 (1973); *Chimel,* 395 U.S. at 763.

There are constitutional limitations to the scope and power of search incident to arrest.

All defendants failed to respect these limitations in the search of Shipley's person and

vehicle. "In many cases, as when a recent occupant is arrested for a traffic violation, there

will be no reasonable basis to believe the vehicle contains relevant evidence. *Arizona at*

343 See, e.g. *Atwater v. Lago Vista,* 532 U.S. 318, 324 (2001); *Knowles v. Iowa,* 525 U.S. 113,

118 (1998). In *Arizona,* the United States Supreme Court defined certain limits to search

incident to arrest and balanced search incident to arrest with prior precedent contained in

*Chimel v. California,* 395 U.S. 752 (1969), *New York v. Belton,* 453 U.S. 454 (1981) and

*Thornton v. United States,* 541 U.S. 615 (2004). The Court concluded:

"Under our view, *Belton* and *Thornton* permit an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest. Other established Exceptions to the warrant requirement authorize a vehicle search under additional Circumstances when safety or evidentiary concerns demand. For instance, *Michigan v. Long*, 463 U.S. 1032 (1983), permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous' and might access the vehicle to 'gain immediate control of weapons.'" *Id.* At 1049 (citing *Terry v. Ohio,* 392 U.S. 1, 21

(1968)).

Shipley was not within reaching distance of the vehicle. He had been seized and forced to stand near Bryant's patrol vehicle. Furthermore, it is unreasonable to believe either that the vehicle contained evidence of the offense of arrest or that safety or evidentiary concerns demanded a warrantless search. The only evidence of a vehicle's window tint is not inside the vehicle or its compartments but instead is the tinted film applied to the vehicle's windows. By design, windows are part of the outer body of a vehicle. It is unreasonable that the vehicle's interior or compartments would contain evidence of the offense of arrest.

Officers had options instead of a warrantless search of Shipley's vehicle. The vehicle was immoblle, parked on the side of Broad Street. The officers did not seek a search warrant and no other warrant exceptions applied to these particular facts. As such, defendants violated rights guaranteed to Shipley under the United States Constitution. As United States Supreme Court Associate Justice John Paul Stevens ordered in *Arizona,*

> "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies."

The search of Shipley's person and vehicle was unreasonable and violated guarantees of the United States Constitution.

**G. FOURTH AMENDMENT HISTORY IN THE SUPREME COURT OF THE UNITED STATES AND THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT DOES NOT SUPPORT THE SEARCH AND SEIZURE**

The Fourth Amendment to the United States Constitution was ratified by the States in 1791. The Fourth Amendment's text was cited above and since 1791 the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have long recognized freedom from unreasonable searches and seizures is a clearly established constitutional right. A survey of each Court reveals a long-standing adherence to the sanctity of the right to be free from unreasonable searches and seizures. In *Olmstead v. United States,* 277 U.S. 438 (1928), the Supreme Court found that a search required a type of physical examination of one's person, papers, physical effects, or home. Although the Fourth Amendment was ratified in 1791, it's guarantees were not incorporated and applied to the States until the case of *Mapp v. Ohio,* 367 U.S. 643 (1961), In *Mapp,* the Court ruled that once stopped, an individual could be frisked if believed to be armed as dictated in *Terry v. Ohio,* 392 U.S. 1 (1968). Fourth Amendment jurisprudence has continued to develop as Technology advances. In *Carpenter v. United States,* 138 S.Ct. 2206 (2018), the Supreme Court held that a search of an individual's cell phone records by law enforcement must meet all Fourth Amendment guarantees or such information is inadmissible.

Similarly, the United States Court of Appeals for the Sixth Circuit also has a long history of respect and adherence to Fourth Amendment guarantees. The Sixth Circuit held

in *Jacob v. Twp. of W. Bloomfield,* 531 F.3d 385 (6th Cir. 2008) that warrantless searches and seizures of a curtilage of a person's house violate the long-recognized protection against unreasonable searches and seizures. Shipley's Fourth Amendment constitutional rights were violated by all the Defendants.

In Bryant's Memorandum in Support of Motion for Summary Judgment, he explores cases involving the smell of marijuana or hemp as the basis for probable cause to perform a traffic stop. He cites *United States v. Brown,* No: 23-5983 (6th Cir. Oct. 23, 2024) a case which involved a traffic stop based upon the odor of raw marijuana. Marijuana odor was not the stated purpose for the stop of Shipley's vehicle. Based on the evidence, including officers' video footage, it is abundantly clear that Bryant stopped Shipley based solely on an unfounded and untrue allegation of a window tint violation, not for the smell of marijuana as defendants are now trying to imply the Court.

Incidentally, Shipley told the defendants he is the owner of a hemp store. As such, he is acutely aware that possession of marijuana is illegal under Tenn. Code Ann. § 39-17-417. Unlawful possession of marijuana would significantly endanger Mr. Shipley's ability to maintain his livelihood, as the state would promptly pull his license to sell hemp products if he were ever to be charged with a marijuana offense.

All individual defendants lack any training or ability to distinguish between legal hemp and illegal marijuana. Defendant Serret is the officer who claimed to smell marijuana

about Shipley's automobile. No one person or animal can distinguish the odor of

marijuana from hemp, as they are scientifically the same plant. The Tennessee Bureau of

Investigation has stated,

> '[t]here's no way under a trained eye or even a trained microscope that you can tell
> the difference between [legal hemp and] high grade marijuana, so I think that you
> can only imagine the investigative nightmare or hurdles that that would present. In
> addition, [t]he crime lab has provided hemp samples to K-9 handlers for them to
> experiment with, and they confirmed what they feared which was their dog
> cannot tell the difference between hemp and marijuana. Legal hemp and illegal
> marijuana smell the same, both unburned and burned."
> "*Even Dogs Can't Smell the Difference*", Tennessee Bar Association Journal
> Vol. 55 No. 12, December 2019 issue.

Defendant City of Chattanooga has long been aware of the state's inability to

distinguish legal hemp from marijuana absent advanced lab testing procedures

and the City has taken no proactive steps to train their officers to properly investigate legal

hemp versus illegal marijuana. These training omissions are negligent and reckless.

Defendant Serret's claim of smelling marijuana is not corroborated by any independent

evidence. The K-9 dog failed to alert on the vehicle for marijuana. After a search of the

vehicle, no illegal items or substances attributed to Shipley were recovered. No marijuana

was ever located.

Shipley had a legal right to carry his firearm and holster, and the CBD gummies

found the In his vehicle are not illegal under Tennessee state law. Shipley's Fourth

Amendment rights were clearly established by the United States Supreme

Court and the United States Court of Appeals for the Sixth Circuit.

Based upon the rationale of each defendant, an individual driving a vehicle can be pulled over and the driver interrogated by a law enforcement officer for possessing CBD products, which are legal in the state of Tennessee. Such is outrageous and despite being on notice by this lawsuit, each defendant continues to subject citizens to these stops and seizures despite no basis in fact or training.

### H.     SHIPLEY'S STATE LAW CLAIMS

Shipley's state law claims against all defendants are viable and should be heard by a reasonable jury of Shipley's peers. The motions for summary judgment regarding the state law claims should be denied as genuine material issues of fact exist and must be presented to a jury.

Shipley establishes a claim for conversion of his firearm, holster, and CBD products. To prove conversion, Tennessee law requires an individual prove "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, and (3) in defiance of the true owner's rights." *Kinnard v. Shoney's Inc.,* 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000). From the body cam videos and other exhibits, Bryant and Serret took possession of Shipley's firearm, holster, and CBD products with no legal basis for doing so. The defendants took possession of items which are not prohibited by law and should never have been seized. All defendants have exercised dominion over the gun,

holster, and CBD products. Since Shipley had a right to possess legal items, he was

divested of his ownership in the property and it became the possession of all the

defendants. Contrary to Bryant's assertions, Shipley has in fact asked Defendant

City of Chattanooga for return of his property. Shipley had to hire undersigned counsel to

negotiate with the City for return of the firearm -- return of a legally owned and

possessed firearm that should never have been seized.

Bryant further contends Shipley has never asked for his holster or CBD products.

When Shipley went in person to the City's Property Division, he was told there were no

other items in property other than the firearm. The City advised Shipley they do not

possess the holster or CBD products. However, those items were last in possession of the

City and its individual officers who seized said items from Shipley. Stated simply, Shipley

asked for the return of all his property. The Defendant City indicated they do not have

possession of the other property.

What else must Shipley do to get return of his legal property from an illegal,

unjustified and unreasonable search and seizure? The claims of conversion should apply

against all defendants as none of them took appropriate steps to adequately secure

Shipley's property. This is evidenced most clearly by Defendants' inability to produce the

rest of Shipley's belongings.

Shipley also alleges all defendants should be held responsible for negligence.

The Tennessee Supreme Court in *Satterfield v. Breeding Insulation Co.,* 266 S.W.3d 347, 355 (Tenn. 2008) requires that 1) a duty of care was owed by all Defendants to Shipley, 2) conduct by all defendants fell below a standard of care amounting to a breach of that duty, 3) an injury or loss, 4) causation in fact, and 5) proximate or legal cause. Shipley should be allowed to present his negligence claims against all defendants to a jury of his peers. Shipley was unlawfully stopped, unlawfully searched, and his property was unlawfully seized by all defendants. Each individual defendant officer took an oath to uphold the United States and Tennessee Constitutions, including the duty to protect Shipley's constitutional rights. Law enforcement officers lacking the training and ability to distinguish legal hemp from illegal marijuana arrested Shipley, seizing his person and his property, property which the defendants had no legal rights to seize or possess. All defendants failed in their duty of care to secure and ensure the preservation of all items taken from Shipley. From the discovery process, we know that the Defendant City does not properly train its officers to correctly investigate window tint or marijuana allegations. defendant City is allowing its individual officers to stop, detain, seize, and arrest people and take their personal property for alleged window tint violations despite the City not providing its officers with credible window tint devices. Further, defendant City has been on notice of legal issues surrounding lawful hemp versus illegal marijuana. In his deposition, Defendant Bryant indicated the City had advised officers to treat hemp like marijuana until

the Tennessee Bureau of Investigation states otherwise. However, the Tennessee Bureau of Investigation has long admitted it is impossible for a patrol officer to distinguish between the two. Therefore, it is illogical for law enforcement to continue to assume that legal hemp is illegal marijuana. The unlawful stop, arrest, and seizure of Shipley has caused him harm such as public disgrace, fear, anxiety, discrimination, and fear of future arrests.

Shipley also maintains causes of action against all defendants for intentional and emotional infliction of emotional distress. On Defendant Buckley's body cam video, Bryant tells Shipley he is about to search the vehicle. Shipley is physically alarmed at the comment and he responded, "F*** MAN THAT AIN'T FAIR." Mr. Shipley's physical appearance and emphatic words demonstrate the infliction of emotional distress against all defendants. The collective actions of all defendants against Shipley are outrageous and should not be tolerated in a civilized society such as the State of Tennessee or the United States of America. Defendants should be prohibited from arresting people possessing legal items and who are not engaged in any criminal activity. By arresting Shipley, the defendants violated their constitutional duties and caused Shipley to suffer the intentional and negligent infliction of emotional distress. From Shipley's deposition, he is now left feeling powerless, feels anxiety and bouts of depression, and these injuries significantly impact his life and livelihood. As Shipley further described, since his arrest and the filing of this lawsuit, an increased amount of law enforcement traffic has been observed at his

place of business, the Happy Hemp Pharmacy. These injuries are significant and severe.

His emotional distress claims should be presented to a jury of Shipley's peers.

**CONCLUSION**

Based upon the foregoing response, the motions for summary judgment as to each defendant should be denied.

WHEREFORE, Shipley respectfully requests this Court deny summary judgment as filed by all individual defendants and defendant City of Chattanooga and allow all claims to move forward to a trial of this matter.

Respectfully submitted this the 10th day of March 2025

_____/s/ Neal Pinkston_____
Neal Pinkston, BPR #021245
Pinkston Law, PLLC
1216 E. Main Street, Suite 206
Chattanooga, TN 37408
Office Number: (423) 654-8326
neal@nealpinkstonlaw.com